# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| WILLIAM HILL, | : | Case No. 3:16-cv-00174 |
| | : | |
|    Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| NANCY A. BERRYHILL, | : | |
| Commissioner Of The Social | : | |
| Security Administration, | : | |
| | | |
|    Defendant. | | |

## REPORT AND RECOMMENDATIONS[1]

## I.   Introduction

After toiling for nearly 31 years as an ironworker, Plaintiff William Hill applied for Disability Insurance Benefits. He asserted in his application that he could no longer work as of October 15, 2010 due to his many health problems, including, for example, chronic pain in his knees and feet, chronic fatigue, depression, and high blood pressure. A Social Security Administrative Law Judge (ALJ), Gregory G. Kenyon, concluded that although Plaintiff could no longer work as an ironworker, he could work in less strenuous jobs. As a result, according to ALJ Kenyon, Plaintiff was not under a disability and not eligible for Disability Insurance Benefits.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

Plaintiff brings the present case challenging ALJ Kenyon's non-disability decision. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), the administrative record (Doc. #6), and the record as a whole. Plaintiff asks the Court to reverse the ALJ's decision and remand for payment of benefits. The Commissioner seeks an order affirming the ALJ's non-disability decision.

## II.     **Background**

Plaintiff protectively filed his application for benefits on June 5, 2012. On the last date he met the insured-status requirements for Disability Insurance Benefits (December 31, 2012), he was 53 years old. This placed him the category of a person closely approaching advanced age under Social Security regulations. He has at least a high school education.

Plaintiff testified during a hearing held by ALJ Kenyon that chronic fatigue syndrome causes him to be tired, sleepy, and confused. He sleeps 12 to 14 hours each night and takes 1 or 2 naps during the day. *Id*. at 63. When asked how often he lies down during the day, Plaintiff answered, "About every couple hours, every two hours or so, I take a 10, 15 minute nap. Sometimes I sleep up to an hour." *Id*. He is more tired on some days than others. He has a hard time keeping a thought or maintaining his train of thought. He easily forgets things like where he is going and he therefore stays close to home. He has difficulty concentrating on TV or reading a newspaper. He can watch a TV show, but an hour or two later he cannot remember he'd watched it. (Doc. #6, *PageID* #s 62-64).

Plaintiff has been diagnosed with depression, but he has difficulty distinguishing it from chronic fatigue syndrome. He's had a few crying spells. He also has arthritis in his knee that comes and goes. When he walks around, he sometimes feels like he has a sprained knee or a twisted ankle. His knee does not give out but muscles in his leg become "real weak." *Id*. at 65. He does not have swelling in his knee. The sprain-like pain in his ankle eventually goes away anywhere from a couple of days up to about a week. The pain "moves to his left shoulder a lot of times." *Id*. And he can feel it in his back, almost like it is in his "back bone, sometimes." *Id*. His left-shoulder pain "comes for no reason at all. And then it goes away after a while. *Id*. at 66. "And then it might show up somewhere else…," like in his "wrist or something." *Id*. He described his pain as follows:

> Well, it's usually, mostly the times it hits me is … in my left shoulder and it can come up in my back bone I can feel it almost like it's in the bone itself. And it pops up if I'm somewhere and I've got to do some walking around and standing and that [sic] it'll pop up like in the knee or in the ankle or something. It's like a sprain. Almost like a sprain. But, you know, I didn't sprain it.

*Id*. at 72. A lot of times he has aching pain, "[l]ike a dull ache/pain." *Id*.

Plaintiff also has obstructive sleep apnea. He testified that he uses a CPAP[2] machine every night and could not sleep without it. *Id*. at 66-67.

Plaintiff estimated that he could lift 19 or 20 pounds, stand in place for a couple of minutes, and walk around an average-size block. He showers but sits on a bucket when

---

[2] CPAP, or continuous positive airway pressure, is a device that treats obstructive sleep apnea by using mild air pressure to keep breathing airways open. https://www.nhlbi.nih.gov/health/health-topics/topics/cpap.

he is in the shower because standing is too hard on his feet. He uses insoles in his shoes but when he takes off his shoes, he can barely stand at all. The pain in his feet is arthritic. And bone spurs in both his heels make it harder for him to stand.

Plaintiff sits at every opportunity. *Id*. at 68. He can sit for about 20 or 30 minutes, he then needs to move around a little. He can probably do "light duty" household chores. *Id*. He mentioned laundry and dishes, but he has never done either. *Id*. at 68, 73. He probably could stand long enough to do a sink full of dishes. *Id*. at 73. He can move down to the floor to play with his grandson, but it is hard for him to get back up.

He does not have hobbies, except for spending time with his grandson. He has custody of his grandson. His wife takes care of his grandson 90% of the time. *Id*. at 69.

During an ordinary day, he will get up and eat something. He helps his grandson get on the school bus, then watches some TV. He testified, "And you know, there's things that need to be done. And if I get the energy and get in the mood, I'll try to do something. I can do some things, but I just got to keep taking breaks. Do a little bit, take a good break…." *Id*. If he is doing something that requires him to be on his feet, he needs to take a break to sit every 10 minutes.

Plaintiff quite often feels helpless and hopeless. This usually occurs in the morning when he is still in bed, trying to get up. *Id*. at 75.

In the present case, Plaintiff relies heavily on the opinions provided by his long-term treating physician Dr. Jeanne Kirkland. She explained in a June 2010 letter:

> William Hill has been a patient of mine since February 1989. As early as 1989, William complained of many symptoms of Chronic Fatigue Syndrome. Over the years he has developed more symptoms

4

> and worsening of current symptoms. Since April 1989, he complained of fatigue, back and joint pain, and multiple aches as stated in my previous letter.[3]
>
> Chronic Fatigue Syndrome is a multi-system disease with symptoms that include: muscle and joint pain, cognitive difficulties, often severe mental and physical exhaustion, muscle weakness and depression. William has had all of these, not for a week or month, but for years, getting progressively worse.
>
> The persistent fatigue was unrelated to exertion and not necessarily relieved by rest causing significant reduction in his activity levels both at home and at work. He has complained of impaired memory, concentration, exhaustion, muscle pain, joint pain, and now a chronic cough all documented in my office notes. He has gained a significant amount of weight (50 pounds) over the past several years. All of these things are seen with Chronic Fatigue Syndrome which waxes and wanes over time and just because he may pass a physical exam does not negate the significance of his symptoms and diagnosis. There are no characteristic lab tests to diagnose Chronic Fatigue Syndrome so testing is used to rule out other potential causes, all of which I have done.

(Doc. #6, *PageID* #369) (footnote added).

In July 2012, Dr. Kirkland completed a questionnaire. She listed Plaintiff's diagnoses as "chronic fatigue, arthritis, sleep apnea, depression, hypertension, hearing loss, dyslipidemia, anemia of chronic disease." *Id*. at 388. She explained that his weakness and fatigue was sometimes worse than others. Plaintiff's symptoms included fatigue, back pain, multiple muscle aches, joint pain, and periodic dizziness. Dr. Kirkland described Plaintiff's hypertension as controlled, his dyslipidemia as improved, and his depression as unchanged with ongoing fatigue, loss of interest, and flat affect. *Id*.

---

[3] This appears to reference a letter Dr. Kirkland wrote in April 2009. (Doc. #6, *PageID* # 378-81).

389. She opined that due to weakness, depression, and fatigue, Plaintiff was unable to work, unable to concentrate, and had a poor attention span. *Id*.

Dr. Kirkland completed another questionnaire in January 2013. She listed the same diagnoses she had listed in July 2012, including (in part) chronic fatigue, arthritis, depression, and anemia of chronic disease. *Id*. at 417. She opined that Plaintiff was unable to work due to weakness, depression, and fatigue. These problems caused him to be unable to concentrate, and his attention span was poor, but he was "able communicate without problems, follows instructions well[,] and takes care of personal needs." *Id*. at 418.

In a questionnaire Dr. Kirkland completed on August 6, 2013, she marked certain symptoms indicating that since October 15, 2010, Plaintiff had experienced unexplained persistent or relapsing chronic fatigue that was not substantially alleviated by rest; impaired short-term memory; sore throat; tender cervical or axillary nodes; muscle pain; multi-joint pain without swelling or tenderness; unrefreshing sleep; low-grade fever; poor concentration; and inability to ambulate effectively, *e.g*., inability to walk a block at a reasonable pace on rough or uneven surface, and inability to walk enough to shop or bank. *Id*. at 448. Dr. Kirkland opined that Plaintiff was unable to work, could not stand or sit throughout a workday, and could sit for only 15 minutes at time. *Id*. He occasionally could lift up to 20 pounds and frequently lift up to 10 pounds. *Id*. at 449. Dr. Kirkland reported that Plaintiff has chronic anemia that she monitors periodically. She opined that Plaintiff's chronic depression aggravates his chronic fatigue; she explained, "He is currently on Cymbalta used for depression[,] fatigue[,] & pain. He is

6

experiencing muscle & joint pain, cognitive difficulties with mental and physical exhaustion." *Id*. She noted that poor sleep patterns, due to sleep apnea, will aggravate his current problems. And she explained that she believed there is an objective medical basis for Plaintiff's reports of chronic fatigue. She reasoned, "Chronic fatigue waxes & wanes over time. His memory & concentration impairment, exhaustion, muscle and joint pain, are all consistent with his chronic fatigue." *Id*. at 449. And, Dr. Kirkland lastly recognized that Plaintiff's reported symptoms were at an intensity and persistence reasonably consistent with the medically determined impairments she identified. *Id*. at 450.

### III.     Disability Insurance Benefits And ALJ Kenyon's Decision

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term "disability," under social security law, refers to "any medically determinable physical or mental impairment" that precludes an applicant for benefits from performing a significant paid job—*i.e*., "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the 5 sequential steps described by regulation. *See* 20 C.F.R. § 404.1520(a)(4). Moving through some initial findings, the ALJ reached steps 2 and 3 where he determined that Plaintiff's impairments—including her severe impairments of chronic fatigue syndrome, obstructive

sleep apnea, mild arthritis in his right knee and left shoulder, and depression—did not automatically entitle him to benefits. (Doc. #6, *PageID* #42). At step 4, the ALJ found that Plaintiff could no longer work as an ironworker, and the most he could do despite his limitations (his residual functional capacity, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)), was light work[4] with the following limitations:

1. frequent crouching, crawling, kneeling, stooping, and climbing of ramps and stairs;

2. no climbing of ladders, ropes, and scaffolds;

3. no work around hazards such as unprotected heights or dangerous machinery;

4. occasional overhead reaching;

5. no concentrated exposure to extreme cold or vibrations;

6. no driving of automotive equipment;

7. limited to performing unskilled, simple, repetitive tasks;

8. occasional contact with coworkers, supervisors, and the public;

9. no jobs involving fast paced production work or strict production quotas; and

10. limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work routine from one day to the next.

(Doc. #6, *PageID* #45).

---

[4] Light work without limitations involves, "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b); *see* Doc. #6, *PageID* # 45.

These abilities and limits, plus Plaintiff's age, high-school education, and work experience, led the ALJ to find (step 5) that he could perform a significant number of jobs available in national economy. This led to the ALJ's ultimate conclusion that Plaintiff was not under a disability and not eligible to receive Disability Insurance Benefits. *Id.* at 50-51.

## IV. <u>Standard Of Review</u>

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal

9

criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V. Discussion

Plaintiff contends that the ALJ erred when weighing his treating physician Dr. Kirkland's opinions and the opinions presented by several non-treating medical sources. Plaintiff also contends that the ALJ failed to consider his chronic fatigue and activities of daily living during his credibility analysis. And, Plaintiff asserts that the ALJ erred by not including in his hypothetical questions to the vocational expert, Dr. Flexman's opinion that Plaintiff's "ability to adjust to new tasks would require support."

The Commissioner finds no merit in Plaintiff's contentions and maintains that substantial evidence supports the ALJ's decision.

### A. Medical Source Opinions

Social Security regulations require ALJs to give the opinion provided by a treating physician controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2); *see also Gayheart*

10

*v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). "Even if [a] treating physician's opinion is not given controlling weight, there remains a presumption, albeit a rebuttable one, that the opinion…is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (internal quotations and citations omitted). This rebuttable presumption requires ALJs to continue weighing treating-source opinions under certain factors: the length of the treatment relationship, frequency of examination, specialization of the treating source, supportability of the opinion, and consistency of the opinion with the record as a whole. 20 C.F.R. § 416.927(c)(1)-(6); *see Bowen*, 478 F.3d at 747.

Regulations also require ALJs to provide "good reasons"—meaning, "specific reasons for the weight placed on a treating source's medical opinions …." *Wilson v. Comm'r of Soc. Sec*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting Soc. Sec. R. 96-2p, 1996 WL 374188 at *5 (1996)). The ALJ's reasons must be "supported by the evidence in the case record …." *Id*. The goals are to assist the claimant in understanding the disposition of his or her case and to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.*

The ALJ declined to place controlling or deferential weight on Dr. Kirkland's opinion that Plaintiff was disabled due to chronic fatigue syndrome. The ALJ found that her opinions "are not fully supported by the record." (Doc. #6, *PageID* #49). This is problematic because there is no requirement in the applicable social security regulations or case law that a treating physician's opinions must be "fully supported by the record" in order to be given controlling or deferential weight. This is abundantly clear in the plain language of the regulations. *See* 20 C.F.R. §404.1572(c); *see also Gayheart*, 710 F.3d at

11

376 (describing legal criteria applicable to treating physician). Any modicum of doubt about this, and there is none, is eliminated by Social Security Ruling 96-2p, which explains, "For a [treating source's] medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence…." Social Sec. Ruling 96-2p, 1996 WL 374188, *2 (July 2, 1996). The ALJ therefore erred by weighing Dr. Kirkland's opinions under a stricter ("fully supported by") standard than imposed by the correct legal criteria.

The ALJ discounted Dr. Kirkland's opinions for two additional reasons: "Neither Dr. Kirkland's specific physical findings, nor the level of treatment Dr. Kirkland provided for the claimant are [sic] indicative of limitations which would prevent the claimant from performing light level work within the confines of the above limitations."[5] This constitutes legal error because it upends the required analysis. The regulations required the ALJ to weigh Dr. Kirkland's opinions under the criteria described in 20 C.F.R. § 404.1527(c). The regulations then required the ALJ to assess Plaintiff's residual functional capacity by considering "all of the relevant medical and other evidence…." 20 C.F.R. § 404.1545(a)(3). This included consideration of Dr. Kirkland's opinions after the ALJ weighed her opinions under the correct legal criteria—if he had actually done so. *See id.*; *see also* Soc. Sec. R. 96-8p, 1996 WL 374184, *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC

---

[5] The "above limitations" refers to the ALJ's assessment of Plaintiff's residual functional capacity.

assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). In other words, the legal criteria applicable under § 404.1527(c) should have informed the ALJ's assessment of Dr. Kirkland's opinions, while the medical evidence—including Dr. Kirkland's properly weighed opinions—should have then informed the ALJ's assessment of Plaintiff's residual functional capacity. It was error for the ALJ to upend this analysis by assessing Plaintiff's residual functional capacity and then discounting Dr. Kirkland's opinions based on the ALJ's assessment of Plaintiff's residual functional capacity.

The ALJ also improperly ignored or overlooked certain factors that weighed in favor of crediting Dr. Kirkland's opinions. Dr. Kirkland had treated Plaintiff since 1989, many years before his asserted disability onset date. Regulations directed the ALJ to consider such a lengthy period of treatment. *See* 20 C.F.R. § 404.1527(c)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion…."); *see Gentry*, 741 F.3d at 729 (faulting ALJ's decision that "failed to apply the other factors—such as the nature of the treating relationship and consistency of the opinion—to determine the weight to give Dr. Murphy's opinion…. This violated the treating physician rule."). Dr. Kirkland, moreover, buttressed her opinions in a June 2010 letter with well-reasoned and probative explanations. She wrote, for example, that Plaintiff's "persistent fatigue was unrelated to exertion and not necessarily relieved by rest causing significant reduction in his activity levels both at home and at work." (Doc. #6, *PageID* #369). She identified symptoms of Plaintiff's chronic fatigue syndrome including

13

impaired memory, concentration, exhaustion, muscle pain, joint pain, and chronic cough, and she reported that these were "all documented in my office notes." *Id*. She further noted that all of these symptoms, plus the fact that Plaintiff had gained 50 pounds during the previous several years, "are seen with Chronic Fatigue Syndrome which waxes and wanes over time and just because he may pass a physical exam does not negate the significance of his symptoms and diagnosis." *Id*. And, she reported, "There are no characteristic lab tests to diagnose Chronic Fatigue Syndrome so testing is used to rule out other potential causes, all of which I have done." *Id*. It constituted error for the ALJ to overlook or ignore these aspects of Dr. Kirkland's report. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provided for an opinion, the more weight we will give that opinion…."); *see also Gentry*, 741 F.3d at 724 (citing *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis)); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir.2008) (finding error where the ALJ was "selective in parsing the various medical reports").

Additionally, Dr. Kirkland's June 2010 opinions along with her other opinions consistently identified Plaintiff's symptoms of chronic fatigue syndrome and his resulting work limitations. *See* Doc. #6, *PageID* #s 369, 378-79, 388-89, 417-18, 448-50. Such consistent findings and opinions over time tend to bolster Dr. Kirkland's opinions. The ALJ erred by not considering this. *Brooks v. Comm'r of Soc. Sec.*, 531 Fe. App'x 636,

641 (6th Cir. 2013) ("[T]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" (quoting, in part, *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984)); *see Gentry*, 741 F.2d at 724 (citing *Minor,* 513 F. App'x at 435)*; see also Germany-Johnson*, 313 F. App'x at 777. And, as Plaintiff correctly points out, he has almost all of the symptoms and complications that are characteristic of chronic fatigue syndrome and its impact on those who suffer from it. *See* Doc. #7, *PageID* #s 500-02 (and evidence cited therein); *see also* Soc. Sec. R. 99-2p, 1999 WL 271569 (April 30, 1999) (describing chronic fatigue syndrome and the evidence needed to establish it as a medically determinable impairment).

The ALJ also placed great weight on the opinions provided by Dr. Danopulos who examined Plaintiff on one occasion in August 2012. (Doc. #6, *PageID* #s 47, 50). The ALJ correctly observed, "Dr. Danopulos opined that the claimant's ability to do any work-related activities was affected and restricted from his morbid obesity, which also triggered sleep apnea, along with right knee tricompartmental arthritic changes." *Id*. at 50. It is unclear what the ALJ meant here by placing great weight on these opinions. Dr. Danopulos provided no particular opinion about Plaintiff's work abilities or limits. He merely believed that Plaintiff's work abilities were "affected" by certain conditions; he did not say how or to what extent, and he failed to identify any specific limitation on Plaintiff's work abilities. *See id*. at 405. It seems that the ALJ credited the results of Dr. Danopulos' examination, such as "normal range of motion studies" and x-ray results. *Id*. Crediting these results, however, is not the same as finding that Dr. Danopulos expressed an opinion about Plaintiff's specific work abilities and limitations. The existence of Dr.

15

Danopulos' normal findings says little about Plaintiff's chronic fatigue syndrome or its impact on Plaintiff's work abilities because "there are no specific laboratory findings that are widely accepted as being associated with CFS [chronic fatigue syndrome]…." Soc. Sec. R. 99-2p, 1999 WL 271569, *3. Consequently, without further explanation (which Dr. Danopulos does not provide) of how these normal findings relate to Plaintiff's chronic fatigue syndrome and his work abilities or limits, those normal findings are not inconsistent with Dr. Kirkland's opinions.

The ALJ also omits any mention of Dr. Danopulos's belief that Plaintiff's additional health problems—including, in part, his history of chronic fatigue syndrome and bilateral feet neuralgias—were "all additional burdens." *Id*. at 405. By omitting this, the ALJ creates further confusion about what he placed "great weight" on when weighing Dr. Danopolus' opinions. And, both of Dr. Danopolus' general opinions—(1) Plaintiff's work abilities were "affected" by his morbid obesity and other conditions; (2) his chronic fatigue syndrome and other problems were "all additional burdens"—were not probative of much at all. Those general opinions offered no insight into the validity of Dr. Kirkland's opinions and provided no support for the ALJ's conclusion that Plaintiff could perform a limited range of light work.

Turning to state agency record-reviewing physician Dr. Green, the ALJ gave "great weight" to his opinion that Plaintiff could perform a reduced range of light work. The ALJ reasoned that Dr. Green's opinion "is consistent with the objective medical evidence." (Doc. #6, *PageID* #49). This single conclusory reason, without reference to supporting objective evidence or some supporting explanation, falls far short of the

analysis required by the regulations. *See Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 836-37 (6th Cir. 2016) (Unless the ALJ assigns controlling weight to a treating source's opinions, the ALJ must consider all of the regulatory factors "in deciding the weight to give to any medical opinion.)

Accordingly, for the above reasons, Plaintiff's Statement of Errors in well taken.[6]

**B.     Remand For Benefits Is Warranted**

Remand is warranted when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand due to an ALJ's failure to follow the regulations might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff's credibility lacking, *Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand

---

[6] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's remaining contentions is unwarranted.

under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted "only where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking." *Felisky*, 35 F.3d at 1041 (quoting *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)).

In the present case, the evidence of record establishes that a remand for award of benefits is warranted because the record contains overwhelming evidence, or strong evidence while contrary evidence is lacking, that Plaintiff is under a disability. The overwhelming or strong evidence consists mainly of Dr. Kirkland's well-explained and well-supported opinions about the disabling impact of Plaintiff's health problems, most significantly chronic fatigue symptoms. Contrary evidence is lacking due to the ALJ's problematic analysis of the state agency medical source opinions, due to the omission of meaningful supporting explanations provided by those physicians, and due to the complete absence of any expert medical-opinion during the ALJ's hearing. Additionally, even if Plaintiff retained the residual functional capacity to perform sedentary work, he would be disabled on his disability onset date (10/15/2009) under Grid Rule 201.14.

Plaintiff is consequently entitled to receive Disability Insurance Benefits based on the application he filed on June 5, 2012.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be reversed and this case be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for payment of

benefits based on his June 5, 2012 application for Disability Insurance Benefits; and

2. The case be terminated on the docket of this Court.


| May 2, 2017 | *s/Sharon L. Ovington* |
| --- | --- |
| | Sharon L. Ovington |
| | United States Magistrate Judge |

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).